UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| DEPAUW UNIVERSITY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) CAUSE NO.:_____ |
| HENNESSEE GROUP LLC, CHARLES GRADANTE and E. LEE HENNESSEE, | ) ) 2:05-cv-0249-RLY-WGH ) ) |
| Defendants. | ) ) |

## COMPLAINT

Plaintiff DePauw University, for its complaint against defendants Hennessee Group LLC, Charles Gradante, and E. Lee Hennessee, states:

### PARTIES AND JURISDICTION

1. Plaintiff DePauw University ("DePauw" or "the University") is a not-for-profit corporation incorporated under the laws of the State of Indiana having its principal place of business in Putnam County, Indiana. DePauw is also an Indiana body politic and corporate under the Special Acts of the General Assembly of Indiana of 1837. DePauw operates a liberal arts college in Greencastle, Putnam County, Indiana.

2. Defendant Hennessee Group LLC ("Hennessee Group") is a limited liability corporation incorporated under the laws of the State of New York having its principal place of business at 500 Fifth Avenue, 47th Floor, New York, New York 10110. All of the members of Hennessee Group are citizens of states other than the State of Indiana.

3. Defendant Charles Gradante ("Gradante") is a citizen of the State of New York and is a Managing Principal and a control person of Hennessee Group.

4. Defendant E. Lee Hennessee ("Hennessee") is a citizen of the State of New York and is a Managing Principal and a control person of Hennessee Group.

5. This is a civil action between citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. The Court has subject matter jurisdiction under 28 U.S.C. § 1332. In addition, Count III of this action arises under the Securities Exchange Act of 1934, 15 U.S.C. § 78 j(b). The Court therefore also has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND FACTS GIVING RISE TO CLAIMS

6. DePauw has created an endowment ("the Endowment") to invest and manage the University's funds. Through the Endowment, DePauw seeks to invest its funds wisely and to manage its investments prudently so as to strengthen the University's ability to fund scholarships and academic programs, to provide diverse and expanding opportunities for current and prospective students, and in general to enhance the quality of education available at DePauw. Toward these ends, DePauw strives to invest its funds in such a way as to generate sensible long-term returns, but at the same time to control risk by maintaining a diverse portfolio and avoiding speculative investments. To achieve these goals, the University has, on occasion, engaged the services of independent advisors.

7. One such advisor is Hennessee Group. Hennessee Group holds itself out to potential clients as "your strategic partner in hedge fund investing." In marketing materials provided to DePauw, Hennessee Group boasted:

    (a) "Our clients trust us to establish realistic investment objectives and develop diversified hedge fund portfolios."

(b) "The Hennessee Group has the expertise to help you make informed decisions about complex, highly specialized investment choices. By carefully considering each alternative opportunity, we are able to navigate a course of action that balances risk and return among a well diversified hedge fund portfolio. It's our core business."

(c) "Our core competencies are (1) 'hands on' trading and risk management experience, (2) depth of proprietary research and due diligence, (3) setting and achieving realistic client objectives."

(d) "Our disciplined approach to investment consulting is designed to build and manage wealth through consistency of returns, while managing risk."

(e) "We are particularly proud of the Hennessee Group's extensive proprietary research that shapes the outcome of our portfolio origination process. Those managers that pass our screen undergo extensive analysis of their organization, its personnel, management continuity, investment philosophy, performance history, and risk management. Our due diligence process pays particular attention to each manager's downside volatility and risk control techniques, as we seek to preserve capital without sacrificing upside potential."

8. Persuaded that Hennessee Group had the expertise and would exercise the diligence that it touted, DePauw entered into an Investment Advisory Agreement ("Advisory Agreement") with Hennessee Group on November 18, 2003, accepted by Hennessee Group as of November 19, 2003. A true accurate copy of the Advisory Agreement, without exhibits, is attached hereto as Exhibit A.

9. Under the Advisory Agreement, Hennessee Group agreed (a) to "perform search, evaluation, selection, and introduction services" for DePauw, (b) to "introduce [DePauw] to one or more Hedge Fund(s) that Hennessee [Group] reasonably believe[d] would be appropriate investment vehicles for" DePauw, (c) to "provide continuous and ongoing performance monitoring of the Portfolio," and (d) to "provide [DePauw] with highly confidential information, research and analyses it compiles about numerous hedge funds." DePauw in turn agreed to pay fees to Hennessee Group in exchange for these services.

10. In late 2003, Hennessee Group advised DePauw to invest in one of a group of funds, the Bayou No Leverage Fund LLC ("Bayou NL Fund"), managed by an organization based in Stamford, Connecticut ("Bayou"). In doing so, Hennessee Group represented to DePauw, among other things, that:

(a) the performance, net of fees, of Bayou Superfund LLC, which was managed in a "master/feeder structure" alongside Bayou NL Fund, had been 32.52%, 17.55%, 26.06%, 19.62%, 7.05%, 11.22%, and 12.30% year to date in the years 1997 through 2003, respectively;

(b) the trading and risk management strategy in the Bayou NL Fund had been derived from Bayou Chief Investment Officer Samuel Israel III's ("Israel") twenty years of hands-on equity trading experience;

(c) Bayou NL Fund had implemented a disciplined investment process in order to achieve maximum return on capital with commensurate risk control;

(d) from 1992 until he formed Bayou Fund LLC in 1996, Israel was "head trader" for Omega Advisors, responsible for determining entry and exit points for

all portfolio positions and all equity and financial futures executions;

    (e)  Leon Cooperman had made Israel a partner of Omega in 1994;

    (f)  Hennessee Group had spoken to former employers of Israel and other Bayou investors and conducted a background check on both Israel and Bayou;

    (g)  Hennessee Group had conducted its "5 levels of due diligence" on Bayou;

    (h)  the Bayou NL Fund was audited by Hertz, Herson & Company, LLP; and

    (i)  although a disgruntled employee had filed a lawsuit against Bayou, Hennessee Group had checked into the matter and learned that the court had concluded that there was not sufficient merit to the lawsuit, so the court had sent it away to be arbitrated.

  11.  A true and accurate copy of the Hennessee Group's investment recommendation report to DePauw concerning the Bayou NL Fund, which also includes the recommendation of DePauw's Chief Investment Officer, Carla McGuire, made in reliance upon the research, advice, representations, and recommendation of the Hennessee Group, is attached hereto as Exhibit B and incorporated herein by reference.

  12.  In reliance upon Hennessee Group's representations and recommendation, DePauw invested $1 million in the Bayou NL Fund in January 2004, and another $2.25 million in the Bayou NL Fund in March 2004.

  13.  In connection with advising DePauw to invest in the Bayou NL Fund, Hennessee Group made untrue statements of material fact and omitted to disclose material facts

5

necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. Specifically, the representations listed in subparagraphs 10(a) through (e), (h) and (i) above were false, and the representations listed in subparagraphs 7(b) through (e) and 10(f) and (g) above were at best misleading if not simply false. And the facts that Hennessee Group omitted to disclose to DePauw included among others the following:

    (a)    Hennessee Group had not in fact conducted thorough due diligence on Bayou, Israel, Marino, or the Bayou NL Fund.

    (b)    The purported investment performance results for Bayou Superfund LLC that Hennessee Group provided to DePauw had been falsified.

    (c)    The Bayou Superfund LLC did not even come into existence until 2003, and thus its purported performance since 1997 as described by Hennessee Group to DePauw had been fabricated.

    (d)    From sometime in 1996 until early 2003, Israel, Bayou's Chief Financial Officer Daniel E. Marino ("Marino"), and one or more others had operated a hedge fund called the "Bayou Fund."

    (e)    Within a few months after the Bayou Fund opened and started trading, the Bayou Fund sustained trading losses, and Israel and Marino began lying to the Bayou Fund's investors about the Fund's performance.

    (f)    In December 1998, the Bayou Fund's activities could not withstand an independent audit, so Israel, Marino, and one or more others decided to dismiss the Bayou Fund's independent auditing firm and to begin fabricating auditor's reports, financial statements, and performance summaries.

(g) Pursuant to that plan, Marino created a phony accounting firm, called "Richmond-Fairfield Associates," to pose as an independent certified public accounting firm that was auditing and certifying the financial statements of the Bayou Fund.

(h) Richmond-Fairfield Associates performed no audits at all, independent or otherwise.

(i) Marino was the creator, agent, and principal of Richmond-Fairfield Associates and publicly identified as being affiliated with the firm, and therefore Richmond-Fairfield Associates could not have been independent from the Bayou Fund even if it had been a bona fide firm.

(j) Although the Bayou Fund lost millions of dollars each year through 2002, Israel and Marino created and distributed false performance summaries and false financial statements that purportedly had been, but had not in fact been, audited by Richmond-Fairfield Associates, all reflecting that the Bayou Fund was earning profits.

(k) In early 2003, Israel and Marino liquidated the Bayou Fund and created four successor funds, including the Bayou NL Fund.

(l) The successor funds continued to sustain losses in 2003.

(m) Hertz, Herson & Company, LLP never audited the Bayou NL Fund.

(n) Israel had falsified the resume information that Hennessee Group reported to DePauw, and he had never in fact been "head trader" at, or a partner of, Omega Advisors.

(o) The "disgruntled employee" lawsuit that Hennessee Group had

7

said it had "checked out" was materially different from what Hennessee Group had described to DePauw in late 2003; in fact, the lawsuit had been filed on March 26, 2003, just months before Hennessee Group recommended that DePauw invest in the Bayou NL Fund, by two former employees of Bayou against three Bayou entities, Israel, and Marino; in it, the former employees alleged (i) that Bayou's business was being conducted in a way that raised "possible violations of S.E.C. regulations governing the operation of hedge funds, as well as other perceived possible violations of S.E.C. and N.A.S.D. rules and regulations," (ii) that the principals of Bayou "might be exposed to criminal charges, professional censure, and civil liability," and (iii) that Bayou, Israel, and Marino had terminated both employees in retaliation for one's "requesting information and refusing to engage in any illegal, improper, unethical, or detrimental conduct."

(p) Hennessee Group had not in fact "checked out" the "disgruntled employee" lawsuit or otherwise investigated Bayou, Israel, Marino, Richmond-Fairfield Associates, or the Bayou NL Fund with the skill and care that Hennessee Group purported to exercise or should have exercised before advising DePauw to invest in the Bayou NL Fund.

14. DePauw did not know the facts that Hennessee Group misrepresented and omitted to disclose.

## COUNT I

15. DePauw incorporates by reference the allegations in paragraphs 1 through 14.

16. Hennessee Group engaged in acts and practices that operated or would operate as a fraud or deceit upon DePauw in violation of the Indiana Securities Act.

8

17. DePauw has suffered losses and been forced to retain counsel as a result.

18. Under Indiana Code §23-2-1-19(c), Hennessee Group is liable to DePauw for (a) all consideration that DePauw paid to Hennessee Group for its advice in connection with the investment in the Bayou NL Fund, (b) all losses DePauw has sustained due to the advice, (c) interest at 8%, (d) costs, and (e) reasonable attorneys' fees.

19. Under Indiana Code §23-2-1-19(d), Gradante and Hennessee are liable jointly and severally with and to the same extent as Hennessee Group for such damages.

## COUNT II

20. DePauw incorporates by reference the allegations in paragraphs 1 through 14.

21. Hennessee Group, Gradante, and Hennessee owed fiduciary duties to DePauw.

22. Hennessee Group, Gradante, and Hennessee breached their fiduciary duties.

23. DePauw has sustained damages as a proximate result of the breaches of fiduciary duty.

## COUNT III

24. DePauw incorporates by reference the allegations in paragraphs 1 through 14.

25. By use of the means and instrumentalities of interstate commerce or of the mails, in connection with DePauw's purchase of interests in the Bayou NL Fund, Hennessee Group (a) made untrue statements of material fact and omitted to state material facts necessary in

order to make the statements made, in the light of the circumstances under which they were made, not misleading, and (b) engaged in acts, practices, and/or a course of business that operated or would operate as a fraud or deceit upon DePauw. In doing so, Hennessee Group violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

26. DePauw has suffered losses as a result.

27. As control persons, Gradante and Hennessee are jointly and severally liable for such losses with and to the same extent as Hennessee Group under 15 U.S.C. § 78t.

## COUNT IV

28. DePauw incorporates by reference the allegations in paragraphs 1 through 14.

29. Hennessee Group owed duties to DePauw under the Advisory Agreement.

30. Hennessee Group breached its duties under the Advisory Agreement.

31. DePauw has sustained damages as a result of Hennessee Group's breaches of such duties.

WHEREFORE, plaintiff DePauw University requests:

(a) judgment in its favor and against Hennessee Group, Gradante, and Hennessee, jointly and severally, under Count I for (1) all consideration that DePauw paid to Hennessee Group for its advice in connection with the investment in the Bayou NL Fund, (2) all losses DePauw has sustained due to the advice, (3) interest at 8%, and (4) reasonable attorneys' fees;

(b) judgment in its favor and against Hennessee Group, Gradante, and

10

Hennessee, jointly and severally, under Count II for all losses sustained as a result of the defendants' breaches of fiduciary duties;

   (c)  judgment in its favor and against Hennessee Group, Gradante, and Hennessee, jointly and severally, under Count III for all losses sustained as a result of the defendants' violations of the Securities Exchange Act;

   (d)  judgment in its favor and against Hennessee Group under Count IV for all losses sustained as a result of Hennessee Group's breaches of the Advisory Agreement; and

   (e)  all other appropriate relief.

BAKER & DANIELS LLP

By: *David K. H[signature]*

David K. Herzog, #8021-49
Matthew T. Albaugh, #23293-49
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204
(317) 237-0300
(317) 237-1000 (fax)

11