# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### TERRE HAUTE DIVISION

|  |  |  |
|---|---|---|
| _____ | : |  |
| DEPAUW UNIVERSITY, | : | CASE NO.: 2:05-cv-0249-RLY-WGH |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| vs. | : |  |
|  | : |  |
| HENNESSEE GROUP LLC, | : |  |
| CHARLES GRADANTE and | : |  |
| E. LEE HENNESSEE, | : |  |
|  | : |  |
| Defendants. | : |  |
| _____ | : |  |

---

# DEFENDANTS' BRIEF IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF *IN PERSONAM* JURISDICTION AND IMPROPER VENUE OR, IN THE ALTERNATIVE, MOTION TO TRANSFER TO THE SOUTHERN DISTRICT OF NEW YORK

---

Lee B. McTurnan
Anne Cowgur
MCTURNAN & TURNER
2400 Market Tower
10 West Market Street
Indianapolis, Indiana 46204

Bennett Falk
Matthew Wolper
BRESSLER, AMERY & ROSS, P.C.
2801 SW 149th Avenue, Suite 300
Miramar, Florida 33027

Attorneys for Defendants Hennessee Group
LLC, Charles Gradante and E. Lee Hennessee

# TABLE OF CONTENTS

Page

TABLE OF CASES AND OTHER AUTHORITIES ..........................................................ii

INTRODUCTION..................................................................................................1

STATEMENT OF FACTS ....................................................................................... 2

LEGAL ARGUMENT ............................................................................................ 7

I

THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT
PRECLUDES A FINDING OF PERSONAL JURISDICTION
OVER DEFENDANTS, PURSUANT TO 15 U.S.C § 78aa .......................................... 7

II

THE COMPLAINT SHOULD BE DISMISSED FOR IMPROPER
VENUE BECAUSE NONE OF THE ALLEGED MISCONDUCT
OCCURRED IN INDIANA, DEFENDANTS DO NOT TRANSACT
BUSINESS IN INDIANA, DEFENDANTS DO NOT INHABIT
INDIANA AND DEFENDANTS WERE NOT FOUND IN INDIANA...................... 13

III

EVEN ASSUMING, *ARGUENDO*, THAT THIS COURT FINDS
THAT JURISDICTION AND VENUE ARE PROPER, JUSTICE
REQUIRES THAT THIS ACTION BE TRANSFERRED TO
THE SOUTHERN DISTRICT OF NEW YORK ........................................................ 17

A. The Convenience Of The Parties Warrants Transfer
To The Southern District Of New York.......................................................... 18

B. The Convenience Of The Witnesses Warrants
The Transfer To The Southern District Of New York ..................................... 19

C. The Interests Of Justice Require Transfer To The Southern
District of New York ................................................................................... 20

CONCLUSION ................................................................................................. 22

i

# TABLE OF CASES AND OTHER AUTHORITIES

Page

*Anthem Insurance Co. v. Tenet Healthcare Corp.,* 730 N.E.2d 1227
(Ind. 2000) ................................................................................... 11, 13

*Bamford v. Hobbs*, 569 F. Supp. 160 (S.D. Tex. 1983) 10 ........................... 10

*BFS Diversified Products, LLC v. Tolley-Hughes, Inc.,* 2003 U.S. Dist.
LEXIS 18193 (S.D. Ind. September 25, 2003) ............................... 12

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-476, 105 S. Ct.
2174, 85 L. Ed. 2d 528 (1985) ....................................................... 13

*Continental Casualty Co. v. State of NEW York Mortgage Agency.*, No. 94
C 1463, 1994 WL 532271 *11 (E.D. Ill. Sep. 26, 1994) .............. 20

*Czechorski v. Executive Telecard, Ltd.,*  No. 95 C 2388, 1995  WL
549946 *3-4 ................................................................................. 14-15

*Duckworth v. Medical Electro-Therapeutics, Inc.,* 768 F. Supp. 822
(S.D. Ga. 1991) ............................................................................ 9, 11

*Emjayco v. Morgan Stanley & Co.*, 901 F. Supp. 1397, 1403
(C.D. Ill. 1995) ............................................................................. 18-19

*Fitzsimmons v. Barton,* 589 F.2d 330 (7th Cir. 1979) ........................... 8, 9, 11

*Health Mgmt. Professionals, Inc. v. Diversified Bus. Enters., Inc.,*
822 F. Supp. 795, 797 (S.D. Ind. 1995) ......................................... 7

*In re the Paternity of A.B.,* 813 N.E. 2d 1173, 1176 (Ind. 2004) ................ 12

*Insurance Corp. of Ireland, Ltd. v. Compagnie*, 456 U.S. 694,
102 S. Ct. 2099 (1982*)* ................................................................. 9, 10, 11

*International Medical Group, Inc. v. American Arbitration Association*,
2001 U.S. Dist. LEXIS 13112, *15-16 (S. D. Ind. July 6, 2001) ......... 13

*International Shoe Co. v. Washington*, 326 U.S. 310, 316,
90 L. Ed. 95, 66 S.Ct. 154 (1945) ................................................. 8

*Int'l. Truck and Engine Corp. v. Dow-Hammond Trucks, Co.,* 221
F. Supp.2d 898, 904-906 (N.D. Ill. 2002) ...................................... 20

*Kelley Buick of Atlanta v. TIG Insurance Co.*, No. 1:05-CV-271-TS,
2005 WL 32238325, *2 (N.D. Ind. Nov. 29, 2005) .................................................... 18

*Leema Enterprises, Inc. v. Willi*, 575 F. Supp. 1533, 1537-1538
(S.D.N.Y. 1983) .................................................................................................... 16

*Material Systems Engineering, Inc. v. Shelley Products, Ltd.*,
554 F. Supp. 4 (S.D. Ind. 1982) ............................................................................ 12

*Miller Pipeline Corp. v. British Gas*, 901 F. Supp. 1416 (S.D. Ind. 1995) .................. 9

*Oddi v. Mariner-Denver, Inc.*, 461 F. Supp. 306 (S.D. Ind. 1978) ............................... 12

*Oxford First Corp. v. PNC Liquidating Corp.*, 372 F. Supp. 191
(E.D. Penn. 1874) ................................................................................................... 10, 11

*Peay v. Bellsouth Medical Assistance Plan*, 205 F.3d (10th Cir. 200) .......................... 11

*Que Sera Promotions, Inc. v. Poughkeepsie Ford, Inc.*, No. 2:05CV38
PPS, 2005 WL 2896703, *6 (N.D. Ind. Nov. 2, 2005 .................................................. 13

*SEC v Montana*, No. 1:03-CV-1513-SEB-VSS, 2005 WL 645143
(S.D. Ind. Feb. 15, 2005) ......................................................................................... 14, 15, 16

*Shapiro v. Sante Fe Gaming Corp.*, No. 97 C 6117, 1998 WL 102677
*2 (N.D. Ill. Feb. 27, 1998) ..................................................................................... 15, 16

*Skill-Craft Enterprises, Inc. v. Astro Manufacturing, Inc.*,
No. S90-141, 1990 WL 300705 (N.D. Ind. 1990) ..................................................... 17

*Smith v. Pittsburg National Bank, et al*, 674 F. Supp. 542 (W.D.Va.1987) ............. 9, 10

*State Farm Mutual Automobile Insurance Co. v. Estate of Bussell*,
939 F. Supp. 646, 651 (S.D. Ind. 1996) .................................................................. 18, 20, 21

*United Rope Distributors Inc. v. Seatriumph Marine Corp.*
930 F.2d 532 (7th Cir. 1991) .................................................................................. 9

*Van Dusen v. Barrack*, 376 U.S. 612, 84 S. Ct. 805 (1964) ................................... 17, 21

*Waites v. First Energy Leasing Corp.*, 605 F. Supp. 219, 222
(N.D. Ind. 1985) ..................................................................................................... 19-20

*Washington Square Securities, Inc. v. Sowers*, 218 F. Supp.2d 1108,
1111-1112 (D. Minn. 1990*)* ................................................................................... 8

*Witchita Federal Savings and Loan Assoc. v. Landmark Group, Inc.*
657 F. Supp. 11823 (D. Kan. 1982) ........................................................................ 10, 11

*Woodruff v. Seventh Day Adventists*, No. 1:03-CV-0183-SEB-VSS,
2004 WL 1660331 (S.D. Ind. July 11, 2004) ................................................................. 7

*Young v. First Kentucky Bancorp, Inc.*, No. 94 C 3172, 1994
WL 710775, *3 (N.D. Ill. Dec. 16, 1994) ..................................................................... 21

## OTHER AUTHORITIES

15 U.S.C. §78aa ............................................................................................... 1, 7, 14

17 C.F.R. §240.10b-5 (2004) ................................................................................. 7, 14

## INTRODUCTION

On or about October 12, 2005, Plaintiff DePauw University ("Plaintiff") filed the Complaint against Defendants Hennessee Group, LLC ("Hennessee Group"), Charles Gradante and E. Lee Hennessee (collectively referred to as "Defendants"). The Complaint purports to allege causes of action for violation of Indiana's blue sky statute, breach of contract, breach of fiduciary duty and violation of Section 10b of the Securities Exchange Act of 1934 and Rule 10b-5, promulgated thereunder. The Complaint should be dismissed for lack of *in personam* jurisdiction and improper venue. None of the criteria for *in personam* jurisdiction and venue is present under 15 U.S.C. § 78aa (2004). Specifically, Defendants do not have minimum contacts to the state of Indiana, do not maintain offices or residences in Indiana, do not transact business in Indiana and none of the alleged misconduct occurred here. Requiring them to defend against the allegations contained within the Complaint in the present forum is improper and would offend the traditional notions of fair play and substantial justice as set forth in the Due Process Clause of the Fifth Amendment. As a result of Plaintiff's failure to meet the criteria for jurisdiction and venue under Section 78aa, all of Plaintiff's claims must be dismissed.

Accordingly and for all of the reasons set forth below, Defendants request that the Court enter an Order dismissing the Complaint against Defendants for lack of *in personam* jurisdiction and improper venue. Alternatively, if the Court deems jurisdiction and venue proper in the present forum, Defendants request that the Court transfer the case to the Southern District of New York for the convenience of the parties, the witness and in the interests of justice.

1

## STATEMENT OF FACTS

Hennessee Group is a hedge fund advisory firm. See Gradante Affidavit at ¶ 4. Hennessee Group is a New York corporation with its principal place of business in New York. See Id. at ¶ 4. Defendant Gradante is a Managing Principal of Hennessee Group. See Id. at ¶ 4. Defendant Gradante is a domiciliary of New York and has never been a resident Indiana. See Id. at ¶ 3. Defendant E. Lee Hennessee is a Managing Principal of Hennessee Group. See Lee Hennessee Affidavit at ¶ 4. Defendant E. Lee Hennessee is also a domiciliary of New York and has never been a resident of Indiana. See Id. at ¶ 3. Plaintiff DePauw University ("Plaintiff") is an Indiana not-for-profit corporation organized under the laws of Indiana. See Complaint at ¶ 1.

Hennessee Group does not advertise or otherwise actively solicit clients in Indiana. See Gradante Affidavit at ¶ 5. In fact, Plaintiff is the only Hennessee Group client that is a resident of Indiana. See Id. at ¶ 5.

In or about June 2002, Jerry Burroughs ("Burroughs"), Plaintiff's former Chief Investment Officer, approached Defendant Gradante while attending an institutional investors conference in New York, New York. See Id. at ¶ 6. Burroughs expressed interest in a speech delivered by Defendant Gradante. See Id. at ¶ 6. Burroughs further indicated that Plaintiff was considering investing in hedge funds. See Id. at ¶ 6. However, no business relationship was formed. See Id. at ¶ 6.

Over the course of the next year, Burroughs remained in periodic contact with representatives of Hennessee Group while he discussed his interest in hedge fund investing with the remaining members of Plaintiff's investment committee. See Id. at ¶¶ 6 & 7. Notably, of the approximately ten individuals that comprised the investment committee, only two were residents of Indiana. See Id. at ¶ 12. The remaining committee members were residents of other states, including New York. See Id. at ¶ 12.

2

On or about November 18, 2002, Burroughs contacted Hennessee Group and requested that Hennessee Group prepare a sample investment proposal that Burroughs could discuss with Plaintiff's investment committee. See Id. at ¶ 7. In response to Burroughs' request, Hennessee Group prepared a sample investment portfolio for Plaintiff, based on the criteria provided by Burroughs. See Id. at ¶ 7. On or about January 21, 2003, Burroughs inquired about arranging a meeting in New York City with the investment committee for sometime in February, at which time a representative of Hennessee Group would be present. See Id. at ¶ 8. This meeting did not occur. On or about April 28, 2003, Burroughs again solicited a meeting between the investment committee and Hennessee Group to occur in New York. See Id. at ¶ 9. On or about June 2, 2003, Burroughs and several members of the investment committee met with Defendant Gradante and two of his employees at the University Club in New York City and further discussed their interest in utilizing Hennessee Group's advisory services. See Id. at ¶ 10. Again, no business relationship was formed. See Id. at ¶ 10. On or about June 17, 2003, at Burroughs request, Hennessee Group personnel again met with Burroughs for more than five hours at Hennessee Group's office in New York City. See Id. at ¶ 11.

In or about August 2003, Burroughs was replaced by Carla McGuire ("McGuire") as Plaintiff's Chief Investment Officer. See Id. at ¶ 13. McGuire was a proponent of hedge fund investing and continued to pursue a business relationship with Hennessee Group. See Id. at ¶ 14.

On or about October 3, 2003, McGuire met with Defendant Gradante in New York. See Id. at ¶ 14. McGuire visited Hennessee Group's New York office and reviewed a recommended portfolio as well as a description of various hedge fund managers. See Id. at ¶ 14. By month's end, McGuire reported that the investment committee decided to utilize Hennessee Group. See Id. at ¶ 14. On or about November 11-13, McGuire returned to New York in order to meet with prospective hedge fund managers. See Id. at ¶ 14.

3

On November 19, 2003, Plaintiff and Hennessee Group entered into an Investment Advisory Agreement ("Agreement").  See Exhibit C.  On November 18, 2003, the Agreement was signed by McGuire in Illinois.  See Exhibit C. The following day, and while located in New York, Defendant Gradante accepted Plaintiff's request for services and signed the Agreement on behalf of Hennessee Group.  See Gradante Affidavit at ¶ 15.  Per the Agreement, all oral and written communication was to be directed at McGuire in Chicago, Illinois.  See Exhibit C.  At that time, McGuire was a resident of Illinois, although she also maintained a home in Flagstaff, Arizona.  See Gradante Affidavit at ¶ 13.  At some point, McGuire requested that communication be directed to her at addresses in St. Louis and Ballwin, Missouri.  See Id. at ¶ 16.  Upon information and belief, McGuire moved her residence to Missouri.

Throughout the parties' entire business relationship, Defendants dealt almost exclusively with McGuire.  See Id. at ¶ 16.  Soon after the Agreement was executed, Hennessee Group began advising McGuire on Plaintiff's investments in various hedge funds.  See Id. at ¶ 18.  Among the hedge funds Plaintiff invested was the Bayou  No Leverage Fund, LLC ("Bayou Fund").  See Id. at ¶ 18.  The Bayou Fund is a Delaware limited liability corporation with its principal place of business in Connecticut. The Bayou Fund was managed by Bayou Management, LLC, a limited liability corporation formed under the laws of New York.  However, the individual fund managers of the Bayou Fund were located in Stamford, Connecticut.  See Id. at ¶ 18.  Defendants have no business affiliation with Bayou Management, LLC, the Bayou Fund or its individual fund managers.  See Id. at ¶ 18.

In connection with Plaintiff's investment in hedge funds, including the Bayou Fund, meetings were held between McGuire and representatives of Hennessee Group. See Id. at ¶ 17.  The majority of meetings between Hennessee Group and McGuire occurred in New York City.  See Id. at ¶ 17.

However, a lesser number of meetings occurred in other locations, including Connecticut, New Jersey, California and Florida.  See Id. at ¶ 17. None of these meetings occurred in Indiana.  See Id. at ¶ 17.

Additionally, on the vast majority of occasions, prior to investing in a particular hedge fund, McGuire required an in-person meeting with the fund managers.  See Id. at ¶ 18. Indeed, McGuire met with the individual fund managers of the Bayou Fund at their office in Stamford, Connecticut and performed her own due diligence.[1]  See Id. at ¶ 18.

As mentioned above, McGuire directed that all communication with Plaintiff be directed at McGuire in Chicago, Illinois and St. Louis and Ballwin, Missouri.  See Id. at ¶ 16.  Defendants complied with this request and only contacted McGuire in these locations.  See Id. at ¶¶ 16 & 19.  The only exceptions to this were no more than five sporadic telephone calls (over a nearly two year relationship) initiated by McGuire to Defendant Hennessee Group, while she attended meetings at the university.  See Id. at ¶ 19.  Aside from these aberrations, throughout the business relationship, Defendants, including Hennessee Group and all of its representatives, did not communicate or otherwise send documents and information to Indiana.  See Id. at ¶ 19.

The investment accounts at issue were located at Northern Trust Bank in Chicago, Illinois.  See Id. at ¶ 20.  All investments in which Hennessee Group advised McGuire, including investments in the Bayou Fund, were made for the benefit of these accounts.  See Id. at ¶ 20.  Additionally, all fees paid to Hennessee Group originated from these accounts.  See Id. at ¶ 20.

On or about October 10, 2005, Plaintiff filed the Complaint, alleging that Defendants had violated federal and state securities laws, breached the terms of the Agreement and breached its fiduciary duties to Plaintiff.  See Exhibit C at ¶¶ 15-31.  The majority of potential witnesses, including

---

[1]  The individual fund managers of the Bayou Fund are under criminal prosecution in the Southern District of New York.  The United States Attorneys' Office in the Southern District of New York has not yet appointed a receiver for the Bayou Fund.  However, it is likely that a receiver will soon be appointed in the Southern District of New York.

Defendants and other representatives of Hennessee Group, who had contact with McGuire, are domiciled and/or work in New York.  <u>See</u> Gradante Affidavit at ¶ 21.  Additionally, the majority of documents are located at Hennessee Group's office in New York or the Bayou Fund's individual fund managers' office in Connecticut (or the U.S. Attorneys' Office in the S.D.N.Y.).  <u>See</u> <u>Id.</u> at ¶ 21.

## LEGAL ARGUMENT

In considering a motion to dismiss based on Rule 12(b)(2)-(3), Federal Rules of Civil Procedure, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences bearing on jurisdiction in favor of plaintiff. <u>Woodruff v. Seventh Day Adventists</u>, No. 1:03-CV-0183-SEB-VSS, 2004 WL 1660331 (S.D. Ind. July 22, 2004). However, when a defendant challenges jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction exists. <u>Health Mgmt. Professionals, Inc. v. Diversified Bus. Enters., Inc.</u>, 882 F. Supp. 795, 797 (S.D. Ind. 1995). In its determination, the court may consider all affidavits and other documentary evidence filed in support or against jurisdiction. <u>Woodruff</u>, 2004 WL 1660331, *1.

## I. THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT PRECLUDES A FINDING OF PERSONAL JURISDICTION OVER DEFENDANTS, PURSUANT TO 15 U.S.C § 78aa.

In Count III of the Complaint, Plaintiff alleges a cause of action under Section 10b of the Securities Exchange Act of 1934 (the "Act"), 15 U.S.C. § 78j(b) (2004), and Rule 10b-5 promulgated thereunder. 17 C.F.R. § 240.10b-5 (2004). Section 78aa of the Act provides a basis for exercising personal jurisdiction over a plaintiff's claims arising under Section 10b and 10b-5. 15 U.S.C. § 78aa (2004). However, under the circumstances of this case, subjecting Defendants to the jurisdiction of this Court would violate the Due Process Clause of the Fifth Amendment and offend the traditional notions of fair play and substantial justice.

Section 78aa provides, in relevant part:

> The district courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder…Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in

7

any such district or in the district wherein the defendant is found or is an inhabitant or transacts business…

Id.

When considering personal jurisdiction in federal question cases where there is a nationwide service of process statute, many courts have interpreted such a provision as negating the traditional "two-step" personal jurisdictional analysis set forth in International Shoe Co. v. Washington, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945), and its progeny, i.e., (1) analysis of the forum state's long-arm statute, and (2) analysis of defendant's minimum contacts to the forum state coupled with Fourteenth Amendment Due Process concerns. Instead, these courts have looked to the Fifth Amendment Due Process Clause and stated that personal jurisdiction is proper so long as minimum contacts exist with the United States as a whole. See Fitzsimmons v. Barton, 589 F.2d 330 (7th Cir. 1979); see Washington Square Securities, Inc. v. Sowers, 218 F. Supp.2d 1108, 1111-1112 (D. Minn. 1990).

For example, in Fitzsimmons, the plaintiff averred that personal jurisdiction existed over the non-resident defendant in its 10b-5 claim pursuant to Section 78aa. Fitzsimmons, 589 F.2d at 332. The Seventh Circuit, in finding that personal jurisdiction existed based on defendant's contacts with the United States as whole rather than its contacts with the forum state, relied on the principle that "sovereignty" among individual states and the United States as a whole formed the basis of the minimum-contacts-with-the-nation-test. Id. at 333. The court further stated that the United States was the "sovereign." Id. Although Respondent concedes that Fitzsimmons has not been overruled and remains the law in the Seventh Circuit, several courts have become critical of this expansive interpretation of personal jurisdiction, including the United States Supreme Court.

In Insurance Corp. of Ireland, Ltd. v. Compagnie, 456 U.S. 694, 102 S. Ct. 2099 (1982), the defendant was sanctioned for failing to follow the lower court's discovery order in connection with the court's inquiry into the existence of personal jurisdiction. Insurance Corp. of Ireland, 456 U.S. at 695-696. The defendant claimed that personal jurisdiction did not exist. Id. The Court, in analyzing the fundamental legal principles of personal jurisdiction, stated:

> "[t]he personal jurisdiction requirement recognizes and protects an individual liberty interest. It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty. Thus, the test for personal jurisdiction requires that the 'maintenance of the suit…not offend the traditional notions of fair play and substantial justice.'"

Id. at 702-703 (emphasis added). In finding that personal jurisdiction is a liberty interest unique to the individual and is not premised on principles of sovereignty, the Court essentially eradicated the basis of the Seventh Circuit's decision in Fitzsimmons;[2] see also Duckworth v. Medical Electro-Therapeutics, Inc., 768 F. Supp. 822 (S.D. Ga. 1991) (noting that Insurance Corp. of Ireland has cast doubt on the minimum-contacts-with-the-nation-test and that an alternative test should be applied). Several jurisdictions have noted this distinction and rejected the minimum-contacts-with-the-nation-test in favor of reasonable standards that take into account a defendant's contacts with the forum district.

For example, in Smith v. Pittsburg National Bank, et al, 674 F. Supp. 542 (W.D. Va. 1987), the court identified three different approaches. The first approach is the minimum-contacts-with-the-nation-test, a test Defendants firmly believe would have an unjust application under the circumstances of this case. Smith, 674 F. Supp. at 544, see, e.g., Fitzsimmons, 589 F.2d at 333.

---

[2]  While the Seventh Circuit has not squarely addressed the Supreme Court's decision in Insurance Corp. of Ireland, either intentionally or by the failure of the parties to raise the argument, subsequent cases in the Seventh Circuit and Indiana district courts suggest that the Seventh Circuit has not changed its viewpoint since Insurance Corp. of Ireland. See, e.g., United Rope Distributors Inc. v. Seatriumph Marine Corp., 930 F.2d 532 (7th Cir. 1991); Miller Pipeline Corp. v. British Gas, 901 F. Supp. 1416 (S.D. Ind. 1995).

The second approach is similar to the approach taken in state and diversity cases with one qualification – the court should apply the minimum contacts criteria of the Fourteenth Amendment in the Fifth Amendment Due Process context.  Smith, 674 F. Supp. at 544; see, e.g., Bamford v. Hobbs, 569 F. Supp. 160 (S.D. Tex. 1983); Wichita Federal Savings and Loan Assoc. v. Landmark Group, Inc., 657 F. Supp. 1182 (D. Kan. 1982).

In Wichita Federal Savings and Loan, the plaintiff filed suit under 10b-5 of the Securities Exchange Act based on alleged fraudulent statements made by the defendant in connection with the purchase of several securities.  Wichita Federal Savings and Loan, 657 F. Supp. at 1184-1185.  The Court agreed that Section 78aa conferred jurisdiction on the court but declined to end the inquiry at that point.  Id. at 1193.  The court stated that the Supreme Court's decision in Insurance Corp. of Ireland required a Fifth Amendment Due Process minimum contacts analysis, applying such factors as (1) the burden imposed upon the defendant by litigation in the forum state; (2) defendant's reasonable expectations and foreseeability of litigation in the forum state; (3) plaintiff's interest in convenient and effective relief; (4) the federal judicial system's interest in efficiently resolving controversies; and (5) the forum state's interest in having a court within the forum state adjudicate the dispute.  Id. at 1194.  In rejecting the minimum-contacts-with-the-nation-test, the court in Wichita Federal Savings and Loan, (utilizing the second approach), went on to say: "[t]he court firmly believes these well-reasoned authorities are more consistent with the quintessence of personal jurisdiction."  Id.

The final approach encourages courts to apply a series of factors, including (1) the extent of the defendant's contacts with the place where the action was brought; (2) the inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business; (3) judicial economy; and (4) the nature of the regulated activity and the extent of impact.  Smith, 674 F. Supp. at 544; see, e.g., Oxford First Corp. v. PNC Liquidating Corp., 372 F. Supp. 191 (E.D. Penn.

1974); <u>Peay v. Bellsouth Medical Assistance Plan</u>, 205 F.3d 1206 (10th Cir. 2000); <u>Duckworth v. Medical Electro-Therapeutics, Inc.</u>, 768 F. Supp. 822 (S.D. Ga. 1991).

Regardless of whether this Court applies the test under <u>Wichita Federal Savings and Loan</u> (second approach), the test under <u>Oxford First</u>[3] (third approach), or a combination of the two, it is abundantly clear that Defendants should not be subjected to personal jurisdiction in Indiana. Such a finding would violate the Due Process Clause of the Fifth Amendment because the only contacts Defendants had with Indiana, let alone the Southern District, are preliminary correspondence between Hennessee Group and Burroughs, a sample portfolio sent to Burroughs at his request and five sporadic telephone calls, over a two year period, initiated by McGuire while attending meetings at the University. See supra at pp. 2-5.

The burden that would be imposed on Defendants to litigate this matter in Indiana is exceedingly heavy, considering that Defendants are all domiciled in New York, maintain offices in New York, at least five of their critical witnesses (and the majority of witnesses in the case) are domiciled and/or work in New York and the majority of discovery will be conducted in New York and its immediately surrounding states. Furthermore, requiring Defendants to remain in the Southern District of Indiana does not encourage or promote judicial economy because the large majority of witnesses and documentation are located outside of this Court's subpoena power (but within the subpoena power of the Southern District of New York).

Additionally, the forum state's interest in having the dispute resolved here is minimal given that Indiana state law would not find personal jurisdiction under these facts. <u>See Anthem Insurance Co. v. Tenet Healthcare Corp.</u>, 730 N.E.2d 1227, 1231-1232 (Ind. 2000) (applying traditional two-prong

---

[3] The court in <u>Fitzsimmons</u> disapproved of the <u>Oxford First</u> test in analyzing personal jurisdiction and, instead, indicated that the test should be utilized in analyzing venue. However, <u>Fitzsimmons</u> was decided prior to the Supreme Court's decision in <u>Insurance Corp. of Ireland</u>. <u>See</u> <u>supra</u> at pp. 14-15.

personal jurisdiction analysis, *i.e.*, (1) conduct falls within long-arm statute and (2) minimum contacts with the state such that litigating in a particular forum would not offend the traditional notions of fair play and substantial justice, as envisioned by the Due Process Clause of the Fourteenth Amendment). [4]

The only activity identified in Indiana's long-arm statute that Plaintiff could contend subjects Defendants to personal jurisdiction in this state is that they were "doing business" in the state. Ind. T.R. 4.4(A) (2004). However, under the precedent of this Court, Defendants' contacts with the state do not approach what constitutes "doing business." See <u>BFS Diversified Products, LLC v. Tolley-Hughes, Inc.</u>, 2003 U.S. Dist. LEXIS 18183 (S.D. Ind. September 25, 2003) (finding that the "doing business" prong focuses on numerous common sense factors, such as where the business relationship was formed, where the contract signing occurred, who initiated the relationship and defendant's place of performance); <u>see</u> <u>Material Systems Engineering, Inc. v. Shelley Products Ltd.</u>, 554 F. Supp. 4 (S.D. Ind. 1982) (finding that defendant's receipt of revenues from the state did not constitute doing business where the defendant did not maintain an office, employees, telephone, real estate, personal property, inventory or any bank accounts within Indiana); <u>see also</u> <u>Oddi v. Mariner-Denver, Inc.</u>, 461 F. Supp. 306 (S.D. Ind. 1978) (granting defendant's motion to dismiss for lack of personal jurisdiction because, other than its affiliation with a resident subsidiary corporation, defendant was not "doing business" in Indiana).

Furthermore, subjecting Defendants to the general or specific jurisdiction of the Indiana courts offends the traditional notions of fair play and substantial justice because Defendants' contacts with the

---

[4] Indiana amended its long-arm statute to permit Indiana courts to exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States. Some courts, including courts in the Southern District of Indiana have interpreted this to be a collapse of the "two-prong" approach to analyzing personal jurisdiction into one prong focused on the Due Process limitations of the Fourteenth Amendment. However, in <u>In re the Paternity of A.B.</u>, 813 N.E.2d 1173, 1176 (Ind. 2004), the Supreme Court of Indiana seemingly indicated that the "two-prong" approach was still the proper analysis and, at least one court in the Southern District of Indiana has applied the "two-prong" test. <u>See e.g.</u>, <u>BFS Diversified Products, LLC v. Tolley-Hughes</u>, 2003 U.S. Dist. LEXIS 18183 (S.D. Ind. September 25, 2003). Thus, the two-step approach will be analyzed herein.

state of Indiana do not rise to the degree required by the Fourteenth Amendment Due Process Clause. <u>Anthem Insurance Co.</u>, 730 N.E.2d at 1231-1232.  <u>See</u> <u>Que Sera Promotions, Inc. v. Poughkeepsie Ford, Inc.</u>, No. 2:05CV38 PPS, 2005 WL 2896703, *6 (N.D. Ind. Nov. 2, 2005) (finding no specific personal jurisdiction where virtually all of the contact occurred outside of Indiana, the contract was executed outside of Indiana and the only real connection to Indiana was the fact that defendant entered into a contract with an Indiana resident), citing <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 474-476, 105 S. Ct. 2174, 85 L. Ed.2d 528  (1985); <u>see also</u>  <u>International Medical Group, Inc. v. American Arbitration Association</u>, 2001 U.S. Dist. LEXIS 13112, *30 (S.D. Ind. July 26, 2001) (granting motion to dismiss where non-resident defendant did not enter into a contract in the state, did not appear in the state and, apart from sending a letter to an address in the state in connection with imminent litigation, did not have the necessary minimum contacts with Indiana).

For these reasons as well as the reasons identified above, subjecting Defendants to personal jurisdiction in Indiana offends the traditional notions of fair play and substantial justice under the Fifth and Fourteenth Amendment, therefore requiring this Court to dismiss Plaintiff's Complaint for lack of personal jurisdiction.

## II.   THE COMPLAINT SHOULD BE DISMISSED FOR IMPROPER VENUE BECAUSE NONE OF THE ALLEGED MISCONDUCT OCCURRED IN INDIANA, DEFENDANTS DO NOT TRANSACT BUSINESS IN INDIANA, DEFENDANTS DO NOT INHABIT INDIANA AND DEFENDANTS WERE NOT FOUND IN INDIANA.

Even if this Court finds itself bound by the Seventh Circuit decision in <u>Fitzsimmons</u>, the aggregate facts clearly establish that venue is inappropriate in the Southern District of Indiana.  Section 78aa also provides the basis for venue in cases arising under Section 10b of the Securities Exchange

Act of 1934, 15 U.S.C. § 78aa (2004), and Rule 10b-5, promulgated thereunder. 17 C.F.R. § 240.10b-5 (2004).

> Section 78aa provides, in relevant part:

>> Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business…

Id.

Under the plain language of the statute, venue is improper in the Southern District of Indiana unless (1) the alleged misconduct occurred there; (2) Defendants are found there; (3) Defendants are inhabitants of the Southern District of Indiana; or (4) Defendants transact business in the state. Id.

Defendants are domiciled in New York, do not maintain offices in Indiana, do not advertise or actively solicit clients in Indiana, were not found in Indiana and, as established above, do not otherwise transact business in the state. See supra at pp. 18-20. Thus, the only basis that could validate the present forum is if Defendants committed any of the alleged violations in the Southern District of Indiana. See also SEC v. Montana, No. 1:03-CV-1513-SEB-VSS, 2005 WL 645143 (S.D. Ind. Feb. 15, 2005) (stating that venue would be appropriate if an act or transaction occurred "within the district which represents more than an immaterial part of the allegedly illegal events"), quoting SEC v. Diversified Industries, Inc., 465 F. Supp. 104, 111 (D.D.C. 1979).

However, Plaintiff has not alleged a single fact in the Complaint tending to establish that any of the alleged violations occurred in the Southern District of Indiana or in Indiana as a whole and, indeed, they did not. See Czechorski v. Executive Telecard, Ltd., No. 95 C 2388, 1995 WL 549946, *3-4 (N.D. Ill. Sep. 8, 1995) (transferring venue to New York because Plaintiff failed to allege in the

complaint any basis for venue in the Northern District of Illinois, however, the court also noted that venue was improper in Illinois).

In <u>Montana</u>, the SEC filed an action in Indiana against defendants for their apparent involvement in various fraudulent schemes to defraud approximately twenty-nine investors in various states. <u>Montana</u>, 2005 WL 645143, *1-2. Defendants moved to dismiss the complaint for, *inter alia*, improper venue. <u>Id</u>. at 3. In granting defendants' motion to dismiss, the court stated "[w]e conclude that the Complaint contains no allegations of acts or transactions taking place in the Southern District of Indiana which constitute a material part of the purported scheme…therefore, proper venue over the claims …does not lie here." <u>Id</u>. at 4; <u>see also</u> <u>Leema Enterprises, Inc. v. Willi</u>, 575 F. Supp. 1533, 1537-1538 (S.D.N.Y. 1983) (finding that wire transfer of funds to a bank within the Southern District of New York did not constitute a "material" act under Section 78aa, sufficient to support venue).

In addition to the absence of allegations in the Complaint tending to show that any acts or transactions constituting a violation occurred in Indiana (let alone the Southern District), the fact that Plaintiff, the alleged injured party, resides in Indiana is insufficient to lay venue in this Court. <u>Shapiro v. Santa Fe Gaming Corp.</u>, No. 97 C 6117, 1998 WL 102677, *2 (N.D. Ill. Feb. 27, 1998). In <u>Shapiro</u>, the plaintiff, an Illinois resident, filed suit in the Northern District of Illinois against the defendant, a Nevada corporation. <u>Shapiro</u>, 1998 WL 102677, *1. The plaintiff alleged that defendant was engaged in short-swing transactions in violation of 16(b) of the Securities Exchange Act of 1934. <u>Id</u>. The defendant moved to dismiss the action for improper venue and alleged that Section 78aa did not permit venue in the Northern District of Illinois because the defendant neither inhabited nor was found in Illinois. <u>Id</u>. Additionally, the defendant asserted that it did not transact business or otherwise commit any acts affecting Plaintiff within Illinois. <u>Id</u>. at *2. The court agreed, noting that the challenged transactions did not occur in Illinois and Plaintiff failed to support his conclusory allegation that the

defendant was engaged in widespread misconduct that affected the state. Id. Therefore, the court concluded that under Section 78aa, venue was improper in the Northern District of Illinois. Id.

Plaintiff has not (and cannot) alleged that Defendants committed a material act constituting a violation of 10b or 10b-5 within Indiana. The Complaint does not identify, with any specificity, where the challenged conduct occurred and it is clear that the alleged misconduct occurred in locations outside of Indiana. The Agreement provides that all written and oral correspondence was to be directed at McGuire in Illinois. See Exhibit C. McGuire later instructed that correspondence be directed at her in St. Louis and Ballwin, Missouri. See supra at p. 4. Defendants complied with this request and did not send documents or other correspondence to McGuire in Indiana. See supra at p. 5 The majority of meetings between Defendants and McGuire occurred in New York and no meetings occurred in Indiana. See supra at p. 5. The meeting between McGuire and the individual fund managers of the Bayou Fund occurred in Connecticut. See supra at p. 5. To the extent that misrepresentations were made by the individual fund managers, those misrepresentations occurred in Connecticut, not Indiana. Additionally, to the extent Defendants committed any misconduct, which they wholeheartedly deny, said misconduct had to have occurred in New York or in correspondence or telephone communications while Defendants were in New York and McGuire was outside of Indiana.

Throughout the entire business relationship between Plaintiff and Defendants, the only contact Defendants had with the forum state were preliminary correspondence with Burroughs that never resulted in the Agreement and no more than five sporadic phone calls initiated by McGuire (over the course of nearly two years) while she attended meetings in Indiana. See supra at pp. 5-6. This cannot be considered a "material" act constituting a violation of 10b or 10b-5. See Montana, 2005 WL 645143, *1-3.

16

Accordingly, because venue is improper, Plaintiff's Complaint must, under 28 U.S.C. § 1406(a), either must be dismissed or "if it be in the interests of justice," transferred to the Southern District of New York.[5]

## III. EVEN IF THIS COURT FINDS THAT JURISDICTION AND VENUE ARE PROPER, JUSTICE REQUIRES THAT THIS ACTION BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK

Even if this Court determines that jurisdiction and venue are proper in the Southern District of Indiana, Defendants request, pursuant to 28 U.S.C. § 1404(a), that this action be transferred to the Southern District of New York because it is unquestionably the appropriate venue for this case.  Van Dusen v. Barrack, 376 U.S. 612, 84 S. Ct. 805 (1964) (ruling that the merits of a motion under Section 1404 should be considered on a case-by-case basis).

When considering a motion to transfer venue under Section 1404(a), the court engages in a two-step analysis.  Skill-Craft Enterprises, Inc. v. Astro Manufacturing, Inc., No. S90-141, 1990 WL 300705 (N.D. Ind. 1990).  First, the court must determine if venue is proper in the transferee district, i.e., Southern District of New York.  Skill Craft Enterprises, 1990 WL 300705  at *3.  If venue is proper in the transferee district, the court must balance several factors, including the convenience of the parties, convenience of the witnesses and whether transferring the action comports with the interests of justice.  Id; see § 1404(a).

There can be no dispute  that venue is proper in the Southern District of New York since Defendants are all  domiciled in New York.  Thus, transfer of this action hinges on whether it is more convenient for the parties and the witnesses to litigate this matter in the Southern District of New York and whether said transfer is in the interests of justice.

---

[5] The justice of such a transfer under § 1406(a) is evident and shown in Part III below, although the analysis there is made under 28 U.S.C. § 1404(a) on the premise that transfer is appropriate even if venue were otherwise proper in Indiana.

**A.  The Convenience Of The Parties Warrants Transfer To The Southern District Of New York**

Generally, Plaintiff's choice of venue is given deference **unless** the conduct giving rise to the action occurred in a different forum.  Kelley Buick of Atlanta v. TIG Insurance Co., No. 1:05-CV-271-TS, 2005 WL 3238325, *2 (N.D. Ind., Nov. 29, 2005).  The court must also consider the parties' respective residences and the cost of litigating in a particular forum.  State Farm Mutual Automobile Insurance Co. v. Estate of Bussell, 939 F. Supp. 646, 651 (S.D. Ind. 1996).

The convenience of the parties favors transfer of this action to the Southern District of New York for several equally compelling reasons.  First and foremost, the situs of material events occurred in New York (or Connecticut), not Indiana.  Specifically, the majority of meetings between McGuire and Defendants occurred in New York and the meetings between McGuire and the individual fund managers of the Bayou Fund occurred in Connecticut – a jurisdiction within the subpoena power of the Southern District of New York.  No meetings occurred in Indiana.  See supra at p. 5.  Other than the preliminary correspondence with Burroughs in response to his requests for information and no more than five sporadic phone calls initiated by McGuire while in Indiana, all correspondence between Defendants and McGuire also occurred in locations outside of Indiana and the overwhelming majority of correspondence was sent from New York and received in Illinois.  See supra at pp. 4-6.

The Agreement entered into between Plaintiff and Defendants became fully executed in New York and expressly provides for the application of New York law in interpreting its provisions, including the provision that required Hennessee Group to exercise due diligence in its investigation of prospective hedge fund investments for Plaintiff.  See Exhibit C.  Thus, in this case, the law does not afford Plaintiff's choice of venue any deference.  See Emjayco v. Morgan Stanley & Co., 901 F. Supp. 1397, 1403

18

(C.D. Ill. 1995) (transferring the case to the Southern District of New York because defendants offices were located in New York and the conduct giving rise to the complaint occurred in New York).

Additionally, Defendants are all domiciled in New York and Hennessee Group's principal place of business is located in New York. See supra at p. 2. The majority of documents are located at Hennessee Group's office in New York or the Bayou Fund's individual fund managers' office in Connecticut and are all within the subpoena power of the courts within the Southern District of New York. See supra at p. 6. When the U.S. Attorneys' Office appoints a receiver for the Bayou Fund and Bayou Management, LLC, it is likely that the receiver will be located in the Southern District of New York. As for Plaintiff, throughout the business relationship, the only identifiable party who acted on its behalf was McGuire, a non-resident of Indiana. See supra at p. 4.

Accordingly, the facts clearly establish that the convenience of the parties is best served by transferring this action to the Southern District of New York.

**B.    The Convenience Of The Witnesses Warrants Transfer To The Southern District Of New York**

The convenience of the witnesses also definitively favors transfer of this action to the Southern District of New York. All of the Defendants, at least five of their primary witnesses and the majority of critical witnesses in the case are domiciled in New York and/or work at Hennessee Group's office in New York. See supra at p. 6. Plaintiff, on the other hand, acted solely through McGuire, a non-resident of Indiana. See supra at p. 4. To the extent that Plaintiff's other investment committee members serve as witnesses for either party, all but two of the members are residents of other states, including New York. Therefore, the burden imposed on Defendants and their potential witnesses by being forced to travel to Indiana is substantial when compared to Plaintiff's burden. See Waites v. First Energy Leasing Corp., 605 F. Supp. 219, 222 (N.D. Ill. 1985) (transferring action to Eastern District

19

of New York where the most crucial fact witnesses were located); <u>State Farm Mutual Automobile Insurance Co.</u>, 939 F. Supp. at 651-652 (transferring action to Southern District of Ohio where the majority of witnesses was located).

Accordingly, the convenience of the witnesses is best served by transferring the case to the Southern District of New York where the majority of witnesses will be under the subpoena power of that court.

**C.  The Interests of Justice Require Transfer To The Southern District Of New York**

In considering the "interests of justice" prong, the court looks at several private and public interest factors. <u>Int'l Truck and Engine Corp. v. Dow-Hammond Trucks, Co.</u>, 221 F. Supp.2d 898, 904-906 (N.D. Ill. 2002). Among the private factors are (1) the plaintiff's choice of forum; (2) the situs of material events; (3) ease of access to sources of proof; (4) the availability of compulsory process for the attendance of unwilling witnesses; and (5) the convenience of the parties and their ability to bear the expenses of litigation in a particular forum. <u>Id</u>. at 904; <u>Continental Casualty Co. v. State of New York Mortgage Agency</u>, No. 94 C 1463, 1994 WL 532271, *11 (E.D. Ill. Sep. 26, 1994). Additionally, the court will consider a series of public interest factors, including (1) the relationship of the community to the issue of the litigation; (2) the court's familiarity with the applicable law; and (3) congestion of the respective court dockets. <u>Int'l Truck and Engine Corp.</u>, 221 F. Supp.2d at 905.

The first two private interest factors clearly favor transfer to the Southern District of New York. Although Plaintiff has chosen the Southern District of Indiana as its forum, its choice is not given deference because the situs of the material events occurred in New York (or Connecticut). <u>See</u> <u>supra</u> at pp. 18-19. The final three private factors also favor transfer. Specifically, the majority of witnesses reside and/or work in New York and the bulk of documentary evidence is located in the above-

referenced locations, all within the subpoena power of the courts in the Southern District of New York. See supra at pp. 18-21. Young v. First Kentucky Bancorp, Inc., No. 94 C 3172, 1994 WL 710775, *3 (N.D. Ill. Dec. 16, 1994) (transferring action to Western District of Kentucky where the majority of relevant documents and witnesses were located). It follows that the convenience of the parties and judicial economy are best served by requiring a New York court to address all issues relating to witness attendance and document production. Finally, Plaintiff is an educational institution that will not suffer financial hardship by litigating this action in the Southern District of New York, especially when most of the discovery will occur there.

Turning to the public interest factors, the first factor does not favor jurisdiction in the Southern District of Indiana because, other than the fact that Plaintiff is an Indiana resident and preliminary conversations occurred with Burroughs while located in Indiana (none of which are material to the allegations in the Complaint), none of the critical events are connected to that district. In regard to the second factor, Defendants concede that Plaintiff has alleged a cause of action under Indiana's blue sky law and that Indiana has an interest in resolving claims brought under said statute. Without disputing the applicability of Indiana law to any of Plaintiff's claims, the Southern District of New York is certainly qualified to evaluate securities claims.[6] Additionally, the Agreement was executed in New York and its provisions provide that it be interpreted under the laws of New York.

Finally, the third factor – court congestion – is a consideration in most, if not all, district courts throughout the country, and should not play a significant role in this Court's decision to transfer. See State Farm Mutual Automobile Insurance Co., 939 F. Supp. at 652 (finding that the aggregate of factors, other than having a speedy trial and a judge experienced with the state law, warranted transfer of the case to the Southern District of Ohio); see also Young, 1994 WL 710775, *3 (holding that the

---

[6] See Van Dusen, 376 U.S. at 626-643 (holding that a change of venue does not require a change of law).

21

"mere passage of time is not sufficient to deny a motion to transfer"). Therefore, the interests of justice are also best served by transferring this action to the Southern District of New York.

Accordingly, pursuant to 28 U.S.C. § 1404(a), Defendants request that the Court transfer this action to the Southern District of New York for the convenience of the parties, the witnesses or in the interests of justice.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an Order dismissing the Complaint for lack of personal jurisdiction and for improper venue. Alternatively, pursuant to 28 U.S.C. § 1406(a), Defendants request that the Court transfer this case to the Southern District of New York or, if the Court finds that venue is otherwise proper, Defendants request, pursuant to 28 U.S.C. § 1404a), that the Court transfer this action to the Southern District of New York for the convenience of the parties, witnesses and in the interests of justice.

Respectfully submitted,

s/Lee B. McTurnan                         s/Bennett Falk
s/Anne L. Cowgur                          s/Matthew Wolper

Lee B. McTurnan                           Bennett Falk
Wayne C. Turner                           Brian Amery
Anne L. Cowgur                            Matthew Wolper
MCTURNAN & TURNER                         BRESSLER, AMERY & ROSS, P.C.
2400 Market Tower                         2801 SW 149th Avenue, Suite 300
10 West Market Street                     Miramar, Florida 33027
Indianapolis, Indiana 46204

Attorneys for Defendants Hennessee Group
LLC, Charles Gradante and E. Lee Hennessee

22

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of January, 2006, a copy of the foregoing "Defendants' Brief In Support Of Its Motion To Dismiss For Lack Of *In Personam* Jurisdiction And Improper Venue Or, In The Alternative, Motion To Transfer To The Southern District Of New York" was filed electronically. Notice of this filing will be sent to the following persons by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

> David K. Herzog
> Matthew T. Albaugh
> Baker & Daniels
> 300 North Meridian Street, Suite 2700
> Indianapolis, Indiana 46204

> s/Anne L. Cowgur
> An Attorney for Defendants Hennessee Group, LLC
> Charles Gradante, and E. Lee Hennessee