UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| DEPAUW UNIVERSITY, | : | CASE NO.: 2: 05-cv-0249-RLY-WGH |
| Plaintiff, | : | |
| vs. | : | **AFFIDAVIT OF** <br> **CHARLES GRADANTE** |
| HENNESSEE GROUP LLC, <br> CHARLES GRADANTE and <br> E. LEE HENNESSEE, | : | |
| Defendants. | : | |

STATE OF NEW YORK )
COUNTY OF NEW YORK ) ss.:

    Pursuant to 28 U.S.C. § 1746(2) (2004), I declare under penalty of perjury that the foregoing is true and correct:

1. My name is Charles Gradante. I am more than 18 years of age and understand the nature and obligation of an oath. I have personal knowledge of the facts and statements contained in this Affidavit and each of them is true and correct.

2. I submit this affidavit in support of my application by way of special appearance to dismiss the claims against Hennessee Group, LLC ("Hennessee Group") and me for lack of personal jurisdiction and improper venue.

3. I am a domiciliary of New York and I have never been a resident of Indiana. I do not now, nor have I ever, owned any property or bank accounts located in Indiana. I do not now, nor have I ever conducted business in Indiana. Additionally, I have never traveled there for purposes of business, recreation, or otherwise.

4. I am a Managing Principal of Hennessee Group, a domiciliary of New York, and I am authorized to act on behalf of Hennessee Group. Hennessee Group has never been a resident of Indiana and does not maintain an office, nor does it transact business in that state. Hennessee group is not licensed to transact business in Indiana and is not otherwise registered with the Indiana Secretary of State.

764244_1



EXHIBIT A

5. Hennessee Group does not own any property or bank accounts located in Indiana nor does it have any systematic or continuous contacts with the state. Specifically, Hennessee Group does not advertise in Indiana and has never actively solicited clients in Indiana. In fact, DePauw University ("DePauw") is the only client of Hennessee Group who is an Indiana resident.

6. In or about June 2002, I delivered a speech at an institutional investors seminar in New York, New York. While at the seminar, DePauw's former Chief Investment Officer, Jerry Burroughs ("Burroughs"), approached me and we engaged in a brief conversation about my speech. We also exchanged business cards. In the months following the seminar, Burroughs kept in periodic contact with me and representatives of Hennessee Group, although no business relationship was formed.

7. On or about November 18, 2002, Burroughs contacted Hennessee Group and requested that the same prepare a sample portfolio of hedge funds for DePauw. Burroughs indicated that he would share the portfolio with other members of DePauw's investment committee. In response to Burroughs' request, Hennessee Group prepared and sent a sample portfolio to Burroughs.

8. On or about January 21, 2003, Burroughs inquired about arranging a meeting in New York City with the investment committee sometime in February, at which time a representative of Hennessee Group would also be present. This meeting did not occur.

9. On or about April 28, 2003, Burroughs again solicited a meeting between the investment committee and Hennessee Group to occur on or about May 27, 2003 in New York.

10. On or about June 2, 2003, Burroughs and several members of the investment committee met with me and two of my employees at the University Club in New York City to further discuss their interest in utilizing Defendant Hennessee Group's advisory services. Again, no business relationship was formed.

11. On or about June 17, 2003, at his request, Hennessee Group personnel met with Burroughs for more than five (5) hours at Hennessee Group's office in New York City.

12. Through my discussions with Burroughs and his successor, I learned that, of the approximately ten investment committee members, only two were residents of Indiana. The remaining committee members were residents of other states, including New York.

13. In or about August 2003, Burroughs terminated his employment with DePauw and was replaced by Carla McGuire ("McGuire"). At that time, McGuire was a resident of Illinois, although she also maintained a residence in Flagstaff, Arizona.

14. McGuire continued to pursue a business relationship with Hennessee Group. On or about October 3, 2003, McGuire visited Hennessee Group's office in New York to further discuss a prospective portfolio. On or about November 11-13, 2003, McGuire returned to New York for the purpose of meeting with prospective hedge fund managers.

15. On November 19, 2003, Hennessee Group and DePauw entered into an Investment Advisory Agreement ("Agreement"), whereby Hennessee Group provided consulting services to DePauw in connection with its investments in certain hedge funds. On November 18, 2003, the Agreement was signed by McGuire in Chicago, Illinois. On November 19, 2003, I signed the Agreement on behalf of Hennessee Group in New York, New York. Thus, the Agreement became fully executed in New York.

16. In connection with the business relationship between Hennessee Group and DePauw, representatives of Hennessee Group, including myself, dealt solely with McGuire. Per the Advisory Agreement, McGuire directed that all written and oral communication, in whatever form, between Hennessee Group and DePauw, was to be sent to McGuire in Chicago, Illinois. At some point, McGuire directed that all correspondence be sent to St. Louis or Ballwin, Missouri. Upon information and belief, McGuire subsequently relocated her residence to Missouri. In compliance with McGuire's instructions, no correspondence was sent to locations within Indiana.

17. In connection with the business relationship between Hennessee Group and DePauw, in-person meetings and presentations occurred between McGuire and representatives of Hennessee Group, including myself. The overwhelming majority of these meetings and presentations occurred in New York. A lesser number of meetings took place in Connecticut, New Jersey, and Florida. No meetings took place in Indiana.

18. On the vast majority of occasions, McGuire required that she meet with the fund managers of each hedge fund prior to investment. McGuire met with the individual fund managers of the Bayou No Leverage Fund, the hedge fund at issue in the Complaint, at their offices in Stamford, Connecticut. This meeting took place prior to DePauw's investment in the Bayou No Leverage Fund. Neither the Hennessee Group nor I have a business affiliation with the Bayou No Leverage Fund.

19. Throughout the business relationship between DePauw and Hennessee Group, McGuire contacted me or representatives of Hennessee Group exclusively from locations outside of Indiana. The only exception to this practice were no more than five phone calls initiated by McGuire to Hennessee Group (over the course of a nearly two year relationship) while she attended meetings in Indiana.

20. At all times relevant hereto, Northern Trust Bank in Chicago, Illinois acted as custodian of the investment accounts at issue in this case. All transactions in which Hennessee Group advised DePauw were executed for the benefit of these accounts,

including the transactions in the Bayou No Leverage Fund. Furthermore, all fees received by Hennessee Group originated from these accounts.

21. All employees of Hennessee Group are domiciled and/or work in New York. The overwhelming majority of potential witnesses that will provide testimony in this case on behalf of the defense, including myself, are domiciled and/or work in New York. Additionally, the majority of documents are located in New York and its immediately surrounding states. The cost and burden of litigating this case in Indiana would be substantial.

Under penalties of perjury, I declare that I have read the foregoing Affidavit and that the facts stated in it are true.

*/s/ Charles Gradante*
Charles Gradante

January 5, 2006
Date

4