# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re Bayou Hedge Funds Investment Litigation )<br>)<br>)<br>) | MDL Docket No. 1755 |

## DEPAUW UNIVERSITY'S OPPOSITION
## TO MOTION TO TRANSFER

DePauw University ("DePauw" or the "University") opposes the motion of

plaintiffs Broad-Bussel Family Limited Partnership, et al. (collectively, "BBF") to transfer

*DePauw University v. Hennessee Group LLC*, Case No. 2:05-cv-0249-RLY-WGH, now pending

in the United States District Court for the Southern District of Indiana, to the District of

Connecticut for coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407. For the reasons

explained below, the Panel should deny BBF's motion to transfer DePauw's case.

## I.     INTRODUCTION

Multidistrict transfers are warranted only when the cases to be transferred present

common and complex questions of fact and the discovery necessary to develop those facts will

be arduous and time-consuming. Here, BBF has not established a basis for transfer on either count, and as to DePauw's case, cannot do so.

In the wake of the Bayou debacle, DePauw commenced its action on October 12, 2005. Because the SEC, the CFTC, and the United States Attorney for the Southern District of New York were already pursuing the Bayou entities and their principals and, DePauw believes, will recover what there is to be recovered from those parties, DePauw chose to defer to those efforts and, for its part, brought suit solely against the investment advisor, Hennessee Group LLP ("Hennessee"), that caused DePauw to invest in Bayou, along with Hennessee's two managing principals. DePauw's complaint includes claims under the Indiana Securities Act, the common law of Indiana, and the Securities Exchange Act of 1934. It is predicated on a fairly simple, mostly undisputed core of operative facts: DePauw sought advice from Hennessee in late 2003 concerning investing in hedge funds; Hennessee prepared a unique, written recommendation report for DePauw; the report included a recommendation that DePauw invest in the Bayou No Leverage Fund and set forth, again in writing, specific facts about that Fund and its management; Hennessee's recommendation report contained statements that were demonstrably false—even identifying the wrong firm that was purportedly auditing the Fund's activities; DePauw unquestionably relied upon Hennessee's report in investing in the Bayou No Leverage Fund; and DePauw has suffered damages as a result.[1]

DePauw's action will not require extensive discovery, either to prosecute or to defend, since its focus is solely on Hennessee's conduct, not Bayou's; it will encompass a

---

[1] The chronology of events and essential facts supporting DePauw's claims against Hennessee and its principals are set out in an affidavit that DePauw's Chief Investment Officer has submitted in opposition to a motion that the Hennessee defendants have filed challenging personal jurisdiction and venue in the Southern District of Indiana. A copy of that affidavit is attached hereto as Exhibit A. DePauw expects the district court in Indiana to rule on (and deny) the Hennessee defendants' motion in short order. That court is well-equipped to address the issues that Hennessee's motion presents.

manageable number of documents and at most a handful of witnesses. And importantly for present purposes, DePauw's action includes a claim under the Indiana Securities Act, Ind. Code § 23-2-1-19, which is particularly susceptible to resolution by summary judgment, since our Indiana statute imposes liability under a negligence standard and requires no proof of reliance on the defendant's false or misleading statements, but only proof that the statements were false or misleading.

BBF seeks to transfer DePauw's action and another case (the "Gleason Case") to the United States District Court for the District of Connecticut for coordinated pretrial proceedings with two cases already pending in that forum (the "BBF Case" and the "Jewish Federation Case"). DePauw's action has little in common with those cases. Those are actions against the now defunct Bayou family of hedge funds and its principals. The Gleason and Jewish Federation Cases involve entirely different defendants, different causes of action, and a different core of operative facts. Further, little if any of the discovery in the Gleason or Jewish Federation Cases will be necessary to resolve DePauw's case.

Nor does DePauw's case have much in common with BBF's action. Like the plaintiffs in the Gleason and Jewish Federation Cases and unlike DePauw, BBF has sued the Bayou entities and their principals. BBF seeks to represent a class of all Bayou investors and names 26 separate defendants. Its 14-count complaint includes statutory and common law claims under the laws of Connecticut and no claims under the Indiana Securities Act or the Securities Exchange Act of 1934. BBF's primary targets are the Bayou funds, their managers, and certain so-called aider/abettor defendants. BBF also claims to have received investment advice from Hennessee and, on that basis, seeks to represent a subclass of those who invested in

Bayou on Hennessee's advice.[2] While that would be a circumstance common to both cases, it does not warrant this Panel's transferring DePauw's case to Connecticut for pretrial coordination. As noted, Hennessee's investment recommendation to DePauw was in writing, contained statements that were unquestionably false and misleading, and, so far as appears, was one-of-a-kind. Any questions that are common to DePauw's and BBF's actions will be dwarfed by the individualized questions presented by each Hennessee client's case.

Given the very small number of cases sought to be transferred, BBF has not shown and, we submit, cannot show that there are sufficient shared, complex questions of fact and that the discovery required in each case will be sufficiently common and time-consuming to warrant transfer. Accordingly, DePauw respectfully requests that the Panel deny BBF's motion to transfer DePauw's case to Connecticut.

## II.    DISCUSSION

Section 1407(a) authorizes the transfer of civil actions pending in more than one district under certain circumstances well-known to the Panel:  the cases must present common questions of fact, and the Panel must determine that transfer would be "for the convenience of parties and witnesses" and would "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a).

### A.    BBF Has Not Carried Its Burden To Show That the Cases Share Common and Complex Issues of Fact Or That Discovery Will Be Sufficiently Arduous and Time-Consuming to Warrant Transfer.

On a section 1407 motion to transfer, the movant must demonstrate not only that there are common questions of fact, but also that those common questions are sufficiently

---

[2]   Even assuming that there are enough Hennessee advisees to satisfy Rule 23's numerosity requirement, DePauw has no interest in participating in any Hennessee-advisee subclass and has so advised BBF's counsel.

- 4 -

complex and that the accompanying discovery will be so time-consuming as to justify transfer. *In re 21st Century Prods., Inc., "Thrillsphere" Contract Litig.*, 448 F. Supp. 271 (J.P.M.L. 1978). This burden is even more exacting when, as here, the transfer motion involves only a minimal number of actions. *In re Magic Marker Sec. Litig.*, 470 F. Supp. 862, 865 (J.P.M.L. 1979); *In re Raymond Lee Org., Inc. Sec. Litig.*, 446 F. Supp. 1266 (J.P.M.L. 1978).

The circumstances, whether present individually or in combination, under which the Panel refuses to transfer pending cases are well established:

First, the Panel may deny transfer where the request involves a small number of actions. *In re W.E. Hall Co., Inc, Patent Litig.*, 206 F. Supp. 2d 1367 (J.P.M.L. 2002); *In re George Andrew Bratton Litig.*, 206 F. Supp. 2d 1336 (J.P.M.L. 2002); *In re Plasma Display Panels Patent Litig.*, 196 F. Supp. 2d 1378; *In re Eli Lilly & Co. (Cephalexin Monohydate) Patent Litig.*, 446 F. Supp. 242 (J.P.M.L. 1978). Where only a handful of cases are sought to be consolidated, the facts must be very complex and the discovery needed must be sufficiently time-consuming for efficiencies to result from consolidation; otherwise, it is more economical to permit the small number of actions to proceed separately. *Id.*

Here, there are only four cases, and only two outside of Connecticut. Whatever BBF may say about the facts of its case and of the others that include claims against the Bayou entities and their principals, the facts underlying DePauw's case are not complex, and the discovery needed to flesh them out will be neither time-consuming nor duplicated in the other cases.

Second, the Panel may deny transfer where individualized questions predominate over common questions. *In re Eli Lilly & Co. "Oraflex" Prods. Liability Litig.*, 578 F. Supp. 422

- 5 -

(J.P.M.L. 1984); *In re Rely Tampon Prods. Liability Litig.*, 533 F. Supp. 1346 (J.P.M.L. 1982); *In re Luminex Int'l, Inc. Prods. Liability Litig.*, 434 F. supp. 668 (J.P.M.L 1977).

Here, two of the cases sought to be transferred —the Gleason Case and the Jewish Federation Case—share few if any common questions of fact with DePauw's case. As noted, DePauw has sued only Hennessee and its principals based on their having persuaded DePauw through demonstrable misrepresentations to invest millions in a fund that is now in receivership. Only Hennessee's conduct is at issue in DePauw's case. The fact that the Bayou investment that Hennessee recommended was a scam is admitted and well-documented; Bayou's principals have pled guilty to multiple crimes. While the facts concerning those crimes will be relevant background information in DePauw's case against Hennessee, they will not require the discovery that will be necessary in the Gleason and Jewish Federation Cases to support claims against the Bayou defendants, for the simple reason that DePauw is not pursuing those defendants. So far as appears from their complaints, the plaintiffs in the Gleason and Jewish Federation Cases did not rely on investment advisors as DePauw did.

That leaves the BBF case as the sole case with potential to involve material issues that may also arise in DePauw's case. Requests to transfer and consolidate such a small number of actions consistently are denied because they offer limited – or zero – benefit. As the Panel has recognized, there are several alternatives to transfer if relatively few actions are involved. *See In re Eli Lilly & Co. Patent Litig.*, 446 F. Supp. 242, 244 (J.P.M.L. 1978) (listing alternative procedures to consolidation where only three cases sought for transfer did not share sufficiently complex questions of fact). Here, DePauw's case against Hennessee and its principals centers on what Hennessee represented to DePauw. The questions it presents would arise in BBF's class action only if a Hennessee subclass were to be certified and DePauw would choose to participate

-6-

in it. But DePauw has chosen to pursue its own action—one that is not encumbered by claims against Bayou, its principals, or so-called aiders/abettors. DePauw respectfully requests that the Panel respect DePauw's choice and leave it to pursue its claims against Hennessee as it deems appropriate.

Third, the Panel may deny transfer where the possibility of conflicting class determinations is minimal. *In re Pharmacy Benefit Plan Administrators Pricing Litig.*, 206 F. Supp. 2d 1362 (J.P.M.L. 2002); *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 490-93 (J.P.M.L 1968) (holding remedial aim of section 1407 is "to eliminate the potential for conflicting contemporaneous pretrial rulings by coordinate" cases; class determinations present the greatest potential for the type of conflicting decisions sought to be avoided).

We see no possibility of conflicting rulings in DePauw's case, on the one hand, and the cases sought to be transferred, on the other. And BBF points to none. Again, DePauw's case turns on what Hennessee represented to DePauw. That question will never arise in BBF's putative class action.

Fourth, and most important, the Panel may deny transfer when the common factual issues are not complex and the accompanying discovery is modest. *In re Ortho Pharmaceutical "Lippes Loop" Prods. Liability Litig.*, 447 F. Supp. 1073 (J.P.M.L. 1978); *In re Environmental Protection Agency Pesticide Listing Confidentiality Litig.*, 434 F. Supp. 1235, 1236 (J.P.M.L. 1977) (actions presenting primarily unique questions pertaining to specific data sought to be exempt from disclosure); *In re United Gas Pipe Line Co. Litig.*, 391 F. Supp. 774, 776 (J.P.M.L.) (factual issues predominantly unique to each plaintiff's relationship with defendant).

Here again, as already discussed, BBF has not shown that the potentially common fact questions in the very small number of pending cases are sufficiently complex and will require sufficiently arduous and time-consuming discovery to warrant transfer. BBF entirely glosses over the particularized allegations in DePauw's Complaint and the numerous individual issues that will swamp any shared factual inquiries. Further, BBF does not discuss what discovery will be necessary to flesh out whatever questions of fact it claims the cases have in common, let alone demonstrate that this discovery will be difficult or time-consuming such that consolidation will produce efficiencies or conserve resources. We submit that the reason BBF omits this discussion is that the circumstances here do not support the argument. In DePauw's case at least, the facts can and will be established through minimal discovery. DePauw does not need, want to participate in, or want to wait for, the extensive discovery and class-action procedure that the BBF plaintiffs have made necessary in their case. DePauw's case is straightforward, and DePauw wants to get on with it.

**B.     Several Factors Underscore That Pretrial Consolidation of DePauw's Case Would Not Achieve Efficiencies.**

Other factors confirm that transferring DePauw's case to Connecticut for coordinated pretrial proceedings with the cases that are focused on Bayou and its principals not only would not achieve efficiencies, but also would burden each set of parties with issues in which they have little or no interest.

**1.     Hennessee's investment recommendation to DePauw was unique.**

First, as noted, Hennessee's investment recommendation to DePauw was unique. The same day DePauw's Chief Investment Officer executed the Investment Advisory Agreement with Hennessee, she sent an e-mail to Hennessee attaching an electronic copy of a memorandum

template that she had created and wanted Hennessee to use in submitting its recommendations

for hedge fund investments and related due-diligence and other information to DePauw's

Investment Committee. (McGuire Decl. ¶¶ 10, 15.) A copy of Hennessee's recommendation

report to DePauw's Investment Committee is attached as Exhibit B to DePauw's Complaint,

which BBF included in its submission to the Panel. The unique nature of this recommendation

distinguishes it, and DePauw's case, from those pertaining to other Hennessee advisees that may

be included in BBF's subclass were one to be certified. And discovery in DePauw's case will

focus on this recommendation, not on the myriad Bayou-related and class-action-procedure

issues that will dominate BBF's case.

### 2. The circumstances of DePauw's endowment are unique.

Second, Hennessee's investment recommendation to DePauw was made in light of

DePauw's overall investment objectives and strategy. (McGuire Decl. ¶¶ 2, 7.) DePauw

engaged Hennessee because it wanted to consider diversifying its endowment by investing in

hedge funds but lacked the expertise and resources to evaluate the many options available in this

little-understood market. (McGuire Decl. ¶ 7.) Moreover, DePauw is an educational institution

whose investment goals and strategies are driven by a different set of considerations than those

of private investors such as BBF.

### 3. The timing of Hennessee's recommendation to DePauw will distinguish DePauw's case from those of most other plaintiffs.

Hennessee's recommendation to DePauw was in December 2003, and DePauw

first invested in Bayou in January 2004. But the Bayou funds had been in existence since 1996,

and, based on news reports, consulting firms had begun recommending them to their clients as

early as 2001.[3]  All the red flags about Bayou that should have alerted Hennessee that it was recommending a scam were flapping loudly by late 2003.  The facts supporting DePauw's action and the discovery necessary to flesh them out will differ significantly from the facts and discovery relevant to the claims of those who invested in earlier years, on Hennessee's advice or otherwise.

### 4.    DePauw's action asserts significantly different claims that are not (and with one exception cannot) arise in other cases.

Fourth, as noted, DePauw's action includes claims under the Indiana Securities Act and Indiana common law—claims that cannot arise in the other cases sought to be consolidated—and a claim under the Securities Exchange Act that the BBF plaintiffs have chosen not to plead and that the other plaintiffs cannot assert because they were not Hennessee advisees.  Admittedly, the fact that DePauw has different causes of action than BBF is not dispositive by itself, but it clearly impacts the Panel's determination whether individual questions predominate.  The Panel has recognized that where individual questions predominate over common ones, transfer should be denied because it would produce few if any efficiencies, especially in cases such this, where only two cases sharing Hennessee defendants are sought to be consolidated.  *See, e.g., In re Eli Lilly & Co. "Oraflex" Prods. Liability Litig.*, 578 F. Supp. at 422; *In re Rely Tampon Prods. Liability Litig.*, 533 F. Supp. at 1346.

Effectively admitting that there will be significant individualized questions of fact, BBF attempts to support its motion by pointing out the breadth its claims.  BBF states: "while the exact claims and number of defendants may vary between the Bayou Hedge Fund Litigations, the claims asserted in the [BBF case] are pleaded in great detail and are comprehensive in scope,

---

[3] *See, e.g.*, Gretchen Morgenson, "Clues to a Hedge Fund's Collapse," *New York Times*, Sept. 17, 2005.

encompassing *all* of the defendants named in every other of the Bayou Hedge Fund Litigations, plus several additional defendants as well." (BBF Brf. at 13-14.)

The Panel has rejected this kind of "our-complaint-covers-everything" argument in other contexts. If the sole common fact among a group of cases is an injury claim of "such generality that it covers a number of different ailments for each of which there are numerous possible causes other than the tortious conduct of one of the defendants," a transfer for coordinated pretrial proceedings is inappropriate. *See In re Repetitive Stress Injury Litig.*, 11 F.3d 368, 373 (2d Cir. 1993); Moore's Federal Practice § 112.05[2] ("If the degree of commonality among the actions does not rise to a level such that a transfer would serve the overall convenience of the parties and witnesses and promote the just and efficient conduct of the entire litigation, the transfer will be denied. In such a case, the separate actions can just as easily be conducted independently.").

5. **The "common factual core" that BBF asserts is different from the core facts at issue in DePauw's case.**

BBF sets out six factual questions that it asserts are the "common factual core" supporting transfer. (BBF Brf. at 12-13.) The first four are at most uncontested background in DePauw's case, since DePauw has not sued the Bayou entities or principals: (1) whether Bayou defrauded investors, (2) whether Bayou misappropriated property, (3) whether Bayou breached fiduciary and other duties, and (4) whether Bayou misrepresented its financial and other information. Of the last two "core issues" BBF points to, one—whether Bayou investors should share ratably in any recoveries—is a question of law and does not arise in DePauw's action. The other—whether Bayou investors have sustained damages and, if so, to what extent—does arise in DePauw's action against Hennessee, but it is an individual issue, not a common one.

6.   **Developing the facts in DePauw's case will not require extensive or arduous discovery.**

Nowhere in its motion does BBF explain what discovery will be required to establish the facts that BBF contends are common to, and essential proof in, both its case and DePauw's, let alone that this discovery will be so time-consuming or arduous as to warrant forcing DePauw to come to Connecticut to conduct that discovery in the context of BBF's putative class action. Given BBF's burden to make that showing and its complete failure even to address the point, the Panel should deny transfer.

Moreover, even if DePauw's case shared many common questions of fact with BBF's case (which, as explained above, it does not), transfer still would not be appropriate because the discovery relevant to DePauw's claims against Hennessee will be neither difficult nor time-consuming—consisting of, at most, a small set of documents and only a handful of witnesses. As the Panel has held, where a movant fails to show that the discovery necessary to establish common questions of fact is neither time-consuming nor arduous, transfer should be denied because no efficiencies or savings of resources will result from the transfer. *See, e.g., In re Qwest Communications Int'l, Inc., Securities & "Erisa" Litig.*, 395 F. Supp. 2d 1360, 1361 (J.P.M.L. 2005).

As discussed above and confirmed in the attached Declaration of DePauw's Chief Investment Officer, the number of people in the DePauw-Hennessee business relationship was very small. (McGuire Decl. ¶¶ 2, 11.) For DePauw, McGuire handled nearly all of the communications. (*Id.* ¶¶ 11, 13-14.) Similarly, on the Hennessee side, McGuire dealt almost exclusively with a single analyst, Brian Snider, and Gradante, a Managing Principal. (*Id.* ¶¶ 8, 11, 13.)

Nor are the core facts in DePauw's case complicated (or disputable for that matter). In December 2003, Hennessee recommended that DePauw invest in the Bayou No Leverage Fund. Hennessee did this without disclosing to DePauw that, among other things:

- The auditing firm that Hennessee Group had said was auditing the Bayou Fund (Hertz Herson) had never in fact audited the Bayou Fund;

- The Fund's managers had created a fictitious auditing firm ("Richmond-Fairfield") that they claimed was auditing the Fund, but Hennessee Group had not even disclosed the existence of that firm to DePauw—even though Hennessee Group was receiving audit reports supposedly prepared by Richmond-Fairfield;

- The report concerning Richmond-Fairfield available on a web site maintained by the Office of the Professions of the New York State Education Department disclosed that the Fund's Chief Financial Officer was a member/manager of Richmond-Fairfield, such that Richmond-Fairfield could not have performed independent audits even if it had been *bona fide*;

- The Fund's Chief Investment Officer had falsified significant parts of the resume that Hennessee Group claimed to have verified;

- Hennessee had not in fact conducted "five layers of due diligence" on the Fund, its managers, or its auditor as Hennessee told DePauw it had done.

Since (a) Hennessee's recommendation to DePauw was in writing, and (b) the Bayou principals have admitted to their fraud, most of what DePauw must show to prove its case against Hennessee is already documented. As such, transferring DePauw's case to Connecticut will only complicate and delay what is, from DePauw's perspective, a relatively simple case.

## III.   CONCLUSION

DePauw University respectfully requests that the Panel deny BBF's motion to transfer DePauw's case to Connecticut for pretrial proceedings and leave DePauw free to pursue its individual and unique claims against Hennessee and its principals in the United States District Court for the Southern District of Indiana.

Respectfully submitted,

David K. Herzog
Matthew T. Albaugh
BAKER & DANIELS LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN  46204-1782
(317) 237-0300
(317) 237-1000 (fax)

Dated:  January 24, 2006          *Attorneys for DePauw University*